# UNITED STATES DISTRICT COURT
## District of Kansas
### (Wichita Docket)

UNITED STATES OF AMERICA,

        **Plaintiff,**                **FILED UNDER SEAL**

        **v.**                 **Case No. 15-** _10045_ **-01,02,03,04,05-**EFM

**AGATHA ENNS,**
**GEORGE ENNS,**
**JAMES KIRK FRIEND,**
**MATTHEW THOMAS, and**
**KATHEY SHELLMAN,**

        **Defendants.**

# INDICTMENT

**THE GRAND JURY CHARGES**:

## Introduction

At all times material to this Indictment:

A.    <u>The Bank Secrecy Act</u>

1.    The Bank Secrecy Act ("BSA"), is a series of laws and regulations enacted by Congress which provide civil and criminal penalties against individuals and financial institutions that violate its provisions. In addition, the BSA imposes compliance

responsibilities on financial institutions in order to protect the United States financial system from the flow of illicit money which promote and/or facilitate criminal activity and/or organizations.

2.      Banks, as well as other business entities, qualify as financial institutions within the meaning and control of the BSA.

3.      In 2001, the BSA required banks to develop, implement, and maintain effective anti-money laundering programs reasonably designed to prevent financial institutions from being used to facilitate money laundering.  These programs were required, at a minimum, to include the following:

      (a)      the development of internal policies, procedures, and controls,

      (b)      the designation of a compliance officer,

      (c)      an ongoing employee training program, and

      (d)      an independent audit function to test programs.

31 U.S.C. §5318(h).  The BSA imposes a legal obligation on banks to know their customers' business, the source of their customers' money, and the type of transactions that are typical for their customers.  Banks have a legal obligation to report or, in some cases, refuse to conduct transactions the bank finds suspicious—those that appear to be from an illegitimate source, have no legitimate business purpose, or are out of character with what they understand their customers' business to be.

4.      A bank's anti-money laundering program must involve written policies, procedures and controls governing the verification of customer identification, the filing of reports, the creation and retention of records, responses to law enforcement requests, and other compliance with BSA requirements.  As part of the program, the bank is required to have a compliance officer, who is responsible for assuring that the bank complies with all BSA requirements.

5.      The BSA provides for the filing of different reports concerning certain types of transactions and/or activities.  The purpose of these reporting requirements is to uncover and/or report criminal activity conducted through banks.

6.      One such report is referred to as a Suspicious Activity Report or SAR.  A bank must file a SAR on "any suspicious transaction it believes is relevant to the possible violation of any law or regulation."  31 C.F.R. §1020.320(1).

7.      In addition, a transaction requires reporting if it involves at least $5,000.00 in funds, and the bank knows, or suspects, or has reason to suspect that the transaction –

(a)      involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities as part of a plan to violate or evade any Federal law or regulation or to avoid any transaction reporting requirement under Federal law or regulation; or

(b)      is designed to evade any requirements of the BSA; or

(c)    has no business or apparent lawful purpose or is not the sort in which

the particular customer would normally be expected to engage, and

the bank knows of no reasonable explanation for the transaction after

examining the available facts, including the background and possible

purpose of the transaction.

31 C.F.R. §1020.320(2).

8.    The BSA also requires that any person (including a bank or financial institution), who physically transports or causes to be physically transported, currency or other monetary instruments in an aggregate amount exceeding $10,000.00 into or out of the United States must file a Report of International Transportation of Currency or Monetary Instruments ("CMIR").  31 C.F.R. §1010.340(a).

9.    If a report is not filed pursuant to 31 C.F.R. §1010.340(a), any person who receives United States currency in excess of $10,000.00, which has been transported from outside the United States, must file a report stating the amount of the currency, date of receipt, form of monetary instrument and person from whom received.   31 C.F.R. §1010.340(b).

B.    <u>Mexican Restrictions</u>

10.    In 2010, Mexico imposed restrictions on the amount of United States currency that could be deposited into Mexican financial institutions, which included banks, brokerage houses and foreign exchange dealers.   These regulations imposed different limits on businesses and individuals.  Mexican financial institutions could not

accept or exchange more than $4,000.00 in United States currency per month from individual customers.  These same institutions could not accept or exchange more than $14,000.00 in United States currency from business entities operating in the United States border or defined tourist areas.  These restrictions did not impact non-cash/currency transactions, such as wire transfers.

11.    In September of 2014, modifications to the 2010 Mexico restrictions were published.  The modified regulations allowed financial institutions to receive unlimited United States currency from businesses located anywhere in Mexico for daily purchases, deposit-taking, receiving loan payments or services, or transfers of funds, provided that at a minimum the transactions comply with several measures.

C.    Plains State Bank

12.    The Plains State Bank ("PSB") was established on or about January 1, 1906.  It is located at 411 Grand Avenue in Plains, Kansas.  PSB was, and is, a financial institution or bank whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") since November 25, 1959.

13.    Defendant James Kirk Friend ("defendant Friend") joined PSB in 1990 as a loan officer until his appointment as President in 2005.  Defendant Friend was replaced as President in 2013, when he became a Senior Vice President.

14.    Defendant Kathy F. Shellman ("defendant Shellman") joined PSB in 1980.  In 2014, when she left PSB, she held the position of cashier and IT officer.  Her responsibilities included internal audit functions.

15.     Defendant Matthew Thomas ("defendant Thomas") joined PSB in 2008. Defendant Thomas left PSB in 2014 when he was the BSA officer and a loan officer.

16.     PSB's Board of Directors approved and adopted procedures and policies regarding the BSA.  Beginning as early as July of 2010, the Board designated defendant Thomas as the Bank Secrecy Act Officer, responsible for the overall administration of the BSA compliance program and employee training, which was to occur at least annually. Defendant Shellman was identified as the responsible officer for overseeing independent testing of all internal controls.

17.     PSB's policies further stated that all bank employees who handled a large currency transaction were directed to immediately make a copy of related work tickets and the driver's license of the person involved in the transaction, and take these documents to defendants Thomas and Shellman who were responsible for preparing a Currency Transaction Report ("CTR").

18.     The Board further required that defendants Thomas and Shellman be "responsible for the daily coordination and monitoring of compliance within this program as directed through the BSA Policy and for the filing of suspicious activity reports with proper agencies when deemed appropriate.  The Bank Secrecy Act Officer is responsible for reporting any suspicious situations and other ongoing compliance matters in this area to the Board of Directors of the Bank."

D.    Defendants George Enns and Agatha Enns

19.    Defendants George Enns ("defendant G. Enns") and Agatha Enns ("defendant A. Enns") are residents of Meade, Kansas, who purchased a waterwell business that was incorporated during 1996 in the name of Southwest Windmill and Waterwell, Inc.  In recent years, the Enns have turned the operation of this company over to another family member while they received income from the business.

20.    On or about January 16, 1991, defendants G. Enns and A. Enns opened a checking account at PSB (ending in #7047).  During the time period of 2011, through August of 2014, total deposits into this account were in excess of $6,800,000.00.  Cash deposits, during this same time period, were approximately $1,615,119.00.

21.    In addition, defendants G. Enns and A. Enns had a checking account with Bank of America ("BOA") which was opened on or about March 29, 2012 (ending in #3325).  This account was opened at the El Paso, Texas, branch and used by defendant G. Enns to deposit various monetary instruments, including wires and personal checks.  On May 8, 2012, there were deposits in the cumulative amounts of $734,696.00 and $274,903.00.  On March 5, 2014, United States currency in the amount of $18,000.00 was deposited into this account.

22.    During 2011, and continuing through August of 2014, approximately $935,595.40 was transferred from the Enns' BOA account to the PSB account.  Of this money, approximately $182,200.00 was received from a third party account used for the deposit of United States currency derived from drug trafficking activities.  Transfers into

the Enns' BOA account occurred on July 25, 2012 ($40,000.00), April 16, 2013 ($83,000.00 and $75,000) and April 17, 2013 ($17,000.00).

23.      The account activity in the PSB and BOA accounts was inconsistent with, and not the result of, the Southwest Windmill and Waterwell, Inc.  In addition, the monies flowing through these accounts was not disclosed to the Enns' accountant or reported on their tax returns.

24.      Records show that as early as January 11, 2012, and continuing through August 12, 2014, defendants G. Enns and/or A. Enns crossed the United States border into, and coming out of, Mexico at least 25 times.  On at least four of these occasions, as both defendants were crossing into the United States from Mexico, they were stopped by customs officials and found to be in possession of large amounts of United States currency.  On these four occasions, a CMIR was filed.  The defendants did not file CMIRs at the time of any other border crossings.

25.      On July 26, 2013, defendants G. Enns and A. Enns were stopped at the Columbus, New Mexico, Port of Entry and found to be in possession of approximately $315,700.00 in United States currency which was being carried in a black trash bag.

26.      On August 19, 2013, defendants G. Enns and A. Enns were stopped at the same Port of Entry (entering the United States) and found to be in possession of approximately $154,000.00 in United States currency.

27.     On September 13, 2013, defendants G. Enns and A. Enns were stopped at the same Port of Entry (entering the United States) and found to be in possession of approximately $125,236.00 in United States currency.

28.     On May 13, 2014, defendants G. Enns and A. Enns were stopped at the Santa Teresa, New Mexico, Port of Entry (entering the United States) and found to be in possession of approximately $172,720.00 in United States currency which was being carried in a white plastic bag.  The money was found after an officer asked defendants G. Enns and A. Enns if they had any declarations to make.  After receiving no response, the officer asked defendant G. Enns if he had any money in excess of $10,000.00 to declare. The officer watched as defendant G. Enns looked at his hand where a number was written.  Defendant G. Enns stated that he had $171,300.00 to declare.  When asked if the money was his, defendant G. Enns replied that it was all his, and that he would not have claimed the currency by filing/presenting the CMIR if the customs officer had not asked him if he was carrying any monetary instruments.

29.     Defendant G. Enns told the law enforcement officers that the United States currency was to be used to buy seeds for his seed business in Mexico.  Defendant G. Enns further explained that any large cash deposits he made in the United States would have come from his farm/seed business in Mexico.  When asked if he had knowledge about United States and Mexican banking laws, the defendant said, "yes."  He explained that he had to declare cash over $10,000.00 upon entering the United States from Mexico,

and Mexican laws restricted United States currency from being deposited into Mexican banks.

30.     When asked if he used a Mexican bank for his business, the defendant stated that he used Scotia Bank in Mexico, however, he did not use this bank to wire money to his accounts in the United States because the Mexican banks would not accept deposits of United States currency.   Defendant G. Enns admitted that he has been bringing United States currency across the border from Mexico for years.   Initially, he stated that he declared the currency at the border as required, however, upon further questioning he admitted that he only declared the currency at the border if asked about it.

31.     Defendant A. Enns stated that she was a naturalized United States citizen in 1977 in Kansas, like her husband, George Enns.   She knew that there was a large sum of United States currency in the car, which she helped count (six or seven times) in Mexico the night before.   She advised that George Enns informed her that he cannot deposit the money in the bank in Mexico so he takes it to the United States for deposit.   She denied having any knowledge about how the money is obtained in Mexico or what happened to it after its deposit.

32.     Defendant A. Enns advised that she and George Enns went to Mexico on May 7, 2014.   The purpose of the trip was to visit their farming business in Mexico. When asked about bringing the currency into the United States and taking it to Kansas for deposit, the defendant stated that George Enns told her he had tried to deposit large sums

of cash into the bank in El Paso, Texas, but had been turned away previously because the bank deemed the transactions suspicious.

E.      Account Activity

33.      A review of United States currency deposits, by defendant G. Enns, into the PSB account revealed the following deposits in excess of $10,000.00:

| Date | Amount of Transaction |
|---|---|
| 3/29/2011 | $ 12,000.00 |
| 5/10/2011 | 15,000.00 |
| 6/1/2011 | 15,279.00 |
| 7/5/2011 | 30,000.00 |
| 7/19/2011 | 30,140.00 |
| 7/26/2011 | 16,700.00 |
| 10/11/2011 | 11,420.00 |
| 1/25/2012 | 24,000.00 |
| 2/27/2012 | 40,000.00 |
| 3/5/2012 | 31,000.00 |
| 3/21/2012 | 12,480.00 |
| 3/30/2012 | 15,000.00 |
| 4/26/2012 | 78,000.00 |
| 5/29/2012 | 91,990.00 |
| 6/5/2012 | 19,400.00 |
| 6/22/2012 | 79,240.00 |
| 7/20/2012 | 42,080.00 |
| 8/2/2012 | 100,360.00 |
| 1/11/2013 | 24,200.00 |

| Date | Amount of Transaction |
|------|----------------------|
| 3/14/2013 | 44,050.00 |
| 3/25/2013 | 17,000.00 |
| 4/8/2013 | 68,900.00 |
| 4/16/2013 | 15,000.00 |
| 4/23/2013 | 96,550.00 |
| 5/13/2013 | 50,000.00 |
| 7/29/2013 | 305,000.00 |
| 7/30/2013 | 10,930.00 |
| 8/21/2013 | 153,900.00 |
| 11/14/2013 | 135,500.00 |
| 2/13/2014 | 30,000.00 |

34.     During this same time period, the Enns' PSB account received deposits of checks from individuals reportedly living in Mexico (according to the address of the account holder on the face of the checks).   The total value of these checks was approximately $300,000.00.

35.     On August 19, 2014, defendants Friend and Thomas were interviewed by law enforcement officers about the Enns' account activity.   Defendant Thomas advised that the Enns reported receiving United States currency from the sale of corn seed in Mexico.   Defendant Thomas understood that proceeds from the sales were then brought to PSB for deposit.   Defendant Thomas did not know the location of the business in Mexico, nor could he explain why monies from these alleged sales transactions could not

be wired from a Mexican bank to PSB.  In addition, the defendant could not explain why the Enns would conduct business in a foreign country where the Enns were paid with United States currency.

36.    Defendant Friend admitted that he knew the Enns reported bringing bulk United States currency from Mexico.  When questioned about the filing of a SAR on transactions involving bulk currency, defendant Friend advised that it was bank policy to file a SAR on currency transactions in excess of $100,000.00.

37.    Defendants Friend and Thomas admitted that they did not require the Enns to provide proof that any of the currency transported from the United States was declared at the United States-Mexico border, nor did the bank officials obtain any information, and documentation, from the Enns that would corroborate their statements about the source of the currency or demonstrate that it was consistent with the Enns' business.

38.    Defendants Friend and Thomas stated the Enns carried a term-loan with the bank, which was renewed every year.  Defendant Thomas advised that the Enns told the bank the loan was for the purchase of corn seed.  Although the Enns provided a financial disclosure and tax records, which did not disclose income generated from the sale of corn or corn seed in the United States or Mexico, defendants Friend and Thomas did not believe that the large currency deposits required the filing of a SAR.

39.    Prior to the interview by law enforcement officers, defendants Friend and Thomas had not filed a SAR on behalf of PSB on any transaction conducted on the Enns' bank account.

## Count One

**18 U.S.C. § 1956(h)**
**(Money Laundering Conspiracy)**

40.     Beginning on a date unknown, and continuing through August 12, 2014, in the District of Kansas, and elsewhere, the defendants,

**AGATHA ENNS,**
**GEORGE ENNS, and**
**JAMES KIRK FRIEND**,

and others known and unknown to the Grand Jury, knowingly and intentionally conspired together and with one another, to commit an offense in violation of Title 18, United States Code, Sections 1956 and 1957, that is, the laundering of monetary instruments and transactions, and attempted laundering of monetary instruments and transactions, through cash and check deposits into an account under the custody and control of defendants George Enns and Agatha Enns, with a value in excess of $2,000,000.00, all in violation of Title 18, United States Code, Sections 1956(h) and 2.

## Count Two

**31 U.S.C. § 5318(g)**
**18 U.S.C. § 2**
**(Failure to File Report)**

41.     Beginning as early as March 29, 2011, and continuing through September 12, 2014, in the District of Kansas, the defendants,

**JAMES KIRK FRIEND,**
**MATTHEW THOMAS, and**
**KATHY SHELLMAN,**

-14-

knowingly and for the purpose of evading the reporting requirements of Sections 5313(a) and (g), of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause Plains State Bank, and aided and abetted Plains State Bank, a financial institution, to fail to file a report required under Section 5318(g), of Title 31, specifically, a Suspicious Activity Report (SAR), based upon deposits, and deposit activity, in United States currency and monetary instruments into Plains State Bank account ending in numbers #7047, conducted by and on behalf of defendants Agatha Enns and George Enns, in violation of Title 31, United States Code, Section 5318(g), and Title 18, United States Code, Section 2, with reference to Title 31, United States Code, Section 5322(a).

## Counts Three through Thirty-Two

### 18 U.S.C. § 1956
### (Money Laundering)

42.     That on or about the dates specified below, in the District of Kansas, and elsewhere, the defendants herein,

**AGATHA ENNS,**
**GEORGE ENNS, and**
**JAMES KIRK FRIEND,**

knowing that property involved in the financial transaction specified below represented the proceeds of some form of unlawful activity, did unlawfully, knowingly and intentionally conduct the financial transaction which in fact involved the proceeds of specified unlawful activity, that is conspiracy to distribute a controlled substance and

distribution of a controlled substance in violation of Title 21, United States Code,

Sections 841 and 846, knowing that the transaction was designed, in whole and in part, to

avoid a transaction reporting requirement under federal law:

| Count | Date | Amount of Transaction |
|-------|------|-----------------------|
| 3 | 3/29/2011 | $12,000.00 |
| 4 | 5/10/2011 | 15,000.00 |
| 5 | 6/1/2011 | 15,279.00 |
| 6 | 7/5/2011 | 30,000.00 |
| 7 | 7/19/2011 | 30,140.00 |
| 8 | 7/26/2011 | 16,700.00 |
| 9 | 10/11/2011 | 11,420.00 |
| 10 | 1/25/2012 | 24,000.00 |
| 11 | 2/27/2012 | 40,000.00 |
| 12 | 3/5/2012 | 31,000.00 |
| 13 | 3/21/2012 | 12,480.00 |
| 14 | 3/30/2012 | 15,000.00 |
| 15 | 4/26/2012 | 78,000.00 |
| 16 | 5/29/2012 | 91,990.00 |
| 17 | 6/5/2012 | 19,400.00 |
| 18 | 6/22/2012 | 79,240.00 |
| 19 | 7/20/2012 | 42,080.00 |
| 20 | 8/2/2012 | 100,360.00 |
| 21 | 1/11/2013 | 24,200.00 |
| 22 | 3/14/2013 | 44,050.00 |
| 23 | 3/25/2013 | 17,000.00 |
| 24 | 4/8/2013 | 68,900.00 |

| Count | Date | Amount of Transaction |
|-------|------|-----------------------|
| 25 | 4/16/2013 | 15,000.00 |
| 26 | 4/23/2013 | 96,550.00 |
| 27 | 5/13/2013 | 50,000.00 |
| 28 | 7/29/2013 | 305,000.00 |
| 29 | 7/30/2013 | 10,930.00 |
| 30 | 8/21/2013 | 153,900.00 |
| 31 | 11/14/2013 | 135,500.00 |
| 32 | 2/13/2014 | 30,000.00 |

in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(ii) and 2.

## Counts Thirty-Three through Thirty-Six

### 18 U.S.C. § 1956
### (Money Laundering)

43.     Beginning on or about the dates specified below, in the District of Kansas,

and elsewhere, the defendants herein,

### AGATHA ENNS, and
### GEORGE ENNS,

knowing that property involved in the financial transaction represented the proceeds of

some form of unlawful activity, did unlawfully, knowingly and intentionally conduct the

financial transactions specified below, which in fact involved the proceeds of specified

unlawful activity, that is conspiracy to distribute a controlled substance and distribution

of a controlled substance in violation of Title 21, United States Code, Sections 841 and

846, knowing that the transaction was designed, in whole and in part, to conceal and

-17-

disguise the nature, location, source and ownership of the proceeds of specified unlawful activity:

| Count | Date | Amount of Transaction |
|-------|------|----------------------|
| 33 | 7/25/2012 | $40,000.00 |
| 34 | 4/16/2013 | 83,000.00 |
| 35 | 4/16/2013 | 75,000.00 |
| 36 | 4/17/2013 | 17,000.00 |

in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## Count Thirty-Seven

**18 U.S.C. § 1956**
**(Attempted Money Laundering)**

44.     Beginning on or about May 7, 2014, and continuing through May 14, 2014, in the District of Kansas, and elsewhere, the defendants herein,

**AGATHA ENNS, and**
**GEORGE ENNS,**

knowing that property involved in the financial transaction represented the proceeds of some form of unlawful activity, did unlawfully, knowingly and intentionally attempt to conduct a financial transaction with approximately $172,720.00 in United States currency, which in fact involved the proceeds of specified unlawful activity, that is conspiracy to distribute a controlled substance and distribution of a controlled substance in violation of Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed, in whole and in part, to avoid a transaction reporting

requirement under federal law, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(ii) and 2.

## Forfeiture Allegations

45.   <u>Money Laundering Violations</u>

A.   The allegations contained in Counts One through Thirty-Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

B.   Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, the defendants, Agatha Enns, George Enns, and James Kirk Friend shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

(1)  A forfeiture money judgment in an amount that represents the value of the property involved in the money laundering offenses set out in Counts One and Three through Thirty-Six, which includes the amount of currency deposits referenced in these counts in the approximate amount of 1,535,879.00.

(2)  United States currency in the approximate amount of $172,720.00, seized on May 14, 2014, at the Santa Teresa, New Mexico,

Port of Entry, that represents the value of the property involved in the attempted money laundering offense set out in Count Thirty-Seven.

(3)  Real property commonly referred to as 613 N. Hart in Meade, Kansas, also identified as Lots 5, 6, 7, and 8, Block 6, Wichita Addition, Meade County, Kansas.

46.   Substitute Assets

If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   had been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code Section 2461(c).

**A TRUE BILL**

April 8, 2015
DATE

s/Foreperson
FOREPERSON OF THE GRAND JURY

 s/Barry R. Grissom
_____
BARRY R. GRISSOM
United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 269-6481
Ks. S. Ct. No. 10866
Barry.Grissom@usdoj.gov

<div style="border:1px solid black; text-align:center; font-weight:bold;">It is requested that the trial be held in Wichita, KS</div>